UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | : | CASE NO. 5:09-CR-08 |
| vs. | : | SENTENCING MEMORANDUM |
| RAPHAEL GRIFFIN, Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this sentencing opinion, the Court seeks to provide a thorough explanation of its imposition of a non-guideline sentence in the case of Defendant Raphael Griffin ("Griffin"). *See* *United States v. Liou,* 491 F.3d 334, 339 n.4 (6th Cir. 2007) (holding that "a thorough explanation is the most reliable way for a district court to make clear its reasons supporting a given sentence"); *see also* *Rita v. United States,* 127 S. Ct. 2456, 2468 (2007).

## I. Background

On January 6, 2009, the United States filed an Indictment charging Defendant Griffin with two counts of distributing crack cocaine and one count of distributing powder cocaine. [Doc. 1.] On April 27, 2009, the Defendant pled guilty to all three charges in the Indictment. [Doc. 22.] Defendant Griffin appeared for sentencing on July 15, 2009. At that hearing, the Court sentenced Griffin to imprisonment for 33 months followed by six years of supervised release; the Court also imposed a special assessment of $300. [Doc. 29.] With this opinion, the Court explains the reasons for the chosen sentence.

**II. Sentencing Standard**

Following *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are now advisory. On appellate review, sentences that adhere to the guidelines range are presumptively reasonable. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). In reaching a sentencing determination, a district court within the Sixth Circuit considers the parties' arguments, the advisory guidelines range, and the other relevant 18 U.S.C. § 3553(a) factors. See, *e.g.*, *United States v. Jones*, 489 F.3d 243, 250-51 (6th Cir. 2007); *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). After reviewing the section 3553(a) factors, under the "parsimony provision," district courts must ultimately "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in section 3553(a)(2). 18 U.S.C. § 3553(a); *see also* *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006).

Consistent with *Booker* and its progeny, the Court first determines the advisory guidelines range and then considers the applicable § 3553(a) factors. Guided by the "parsimony provision," the Court ultimately concludes that the Defendant should receive a sentence of 33 months, a sentence that is "sufficient, but not greater than necessary" to fulfill the purposes of the statute.

**III. Crack/Powder Cocaine Sentencing Disparities**

Currently, the Sentencing Guidelines treat crack cocaine and powder cocaine disparately, determining offense levels, and therefore sentences, based on a weight ratio between the two substances of 100:1. U.S.S.G. § 2D1.1, application note 10. Since *Booker*, with the advisory nature of the Guidelines established, some district courts have chosen not to apply the 100:1 ratio when sentencing for crack cocaine offenses. Responding to such a departure by a district court, the Supreme Court in *Kimbrough v. United States*, 128 S.Ct. 558 (2007), held that "it would not be an

abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 128 S.Ct. at 575. This year, the Court reaffirmed *Kimbrough*, and "district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. Unites States*, 129 S.Ct. 840, 843 (2009)(emphasis in original). In *Spears*, the Court acknowledged that if sentencing judges can reject the 100:1 ratio, they can and must necessarily adopt another ratio to govern the mine-run case. *Id.* Thus, the Supreme Court explicitly authorized district courts to adopt a replacement ratio that, in the judgment of the district court, corrects the disparity created by the 100:1 ratio. *Id.*

Following two recent district court decisions categorically adopting a 1:1 crack-to-powder cocaine ratio and recent pronouncements of a policy shift by the U.S. Department of Justice, this Court recognizes the need to address the issue. *See* *United States v. Gully*, 619 F. Supp. 2d 633 (N.D. Iowa 2009); *United States v. Lewis*, 623 F. Supp. 2d 42 (D.D.C. 2009).[1/] Because the *Gully* and *Lewis* opinions provide such extensive and persuasive analysis of the issue, the Court does not reiterate all of the arguments here. The decisions have been further buttressed by Attorney General's comments, delivered since those decisions were filed, that the Department of Justice is currently conducting a review to eliminate the sentencing disparity created by the 100:1 ratio. Attorney General Eric Holder, speech at Charles Hamilton Houston Institute for Race and Justice and

[1/] The Court notes that since it sentenced Griffin, at least three additional district judges have explicitly adopted the 1:1 crack-to-powder cocaine ratio. *Henderson v. United States*, 2009 WL 2969507 (E.D. La. Sept. 11, 2009); *United States v. Medina*, 2009 WL 2948325 (S.D. Cal. Sept. 11, 2009); *United States v. Russell*, 2009 WL 2485734 (W.D. Pa. Aug. 12, 2009); *United States v. Owens*, 2009 WL 2485842 (W.D. Pa. Aug. 12, 2009).

Congressional Black Caucus Symposium, "Rethinking Federal Sentencing Policy: 25th Anniversary of the Sentencing Reform Act" (June 24, 2009), *available at* http://www.usdoj.gov/ag/speeches/2009/ag-speech-0906242.html. In particular, Attorney General Holder announced that "[t]his Administration firmly believes that the disparity in crack and powder cocaine sentences is unwarranted, creates a perception of unfairness, and must be eliminated." *Id.*

Further support comes from the July 22, 2009, action by the House Judiciary Subcommittee on Crime, Terrorism and Homeland Security unanimously passing H.R. 3245, the Fairness in Cocaine Sentencing Act of 2009. Although not yet enacted, the bill removes references to "cocaine base" from the U.S. Code, effectively treating all cocaine, including crack, the same for sentencing purposes.

Judges Bennett and Friedman, in their opinions in *Gully* and *Lewis*, respectively, well explained the unwarranted nature of the crack/powder cocaine sentencing disparity, and the consequent negative results. This Court adopts their reasoning. In particular, this Court is persuaded by the following policy objections: the Guidelines on cocaine offenses "do not exemplify the commission's exercise of its characteristic institutional role," *Kimbrough*, 128 S.Ct. at 575; there exists little, if any, proof that crack cocaine is more addictive than powder cocaine; the current Guidelines punish low-level crack offenders more harshly than high-level powder traffickers; and the gross sentencing disparity fosters disrespect for the law and the criminal justice system. *See Gully*, 619 F. Supp. 2d at 638-43; *Lewis*, 623 F. Supp. 2d at 45-46. For all of these reasons, this Court categorically adopts a 1:1 crack-to-powder ratio for sentencing in this case and all future crack cocaine cases.

## IV. Calculation Under the Advisory Guidelines

The Court begins by calculating Defendant Griffin's sentence under the advisory sentencing guidelines, applying the 100:1 ratio. Pursuant to United States Sentencing Guidelines Manual § 2D1.1, Defendant Griffin's base offense level for the offenses of distribution of crack cocaine and cocaine, based on the weight of the drugs involved, is 24. Griffin accepted responsibility for the offense and is given a three level reduction under §§ 3E1.1(a)-(b). Under these calculations, Defendant Griffin scores an adjusted offense level of 21. Griffin has a subtotal criminal history score of 9. Because the Defendant was on community control at the time of the instant offense, two points are added under § 4A1.1(d). Further, according to § 4A1.1(e), one more point is added because the instant offense was committed less than two years following the Defendant's release from custody on a previous charge. Therefore, Defendant Griffin has a total of 12 criminal history points, and his criminal history category is V. With a total offense level of 21 and a criminal history category of V, the advisory guidelines recommend that Defendant Griffin serve a sentence of imprisonment of 70-87 months. *See* U.S.S.G. ch. 5, pt. A.

Applying the 1:1 crack-to-powder ratio, however, the advisory guidelines suggest a range of 21-27 months. Under the drug quantity tables, distribution of 6.8 grams of powder cocaine results in an offense level of 12. U.S.S.G. § 2D1.1(c)(14). After acceptance of responsibility, Griffin would score an adjusted offense level of 10. U.S.S.G. § 3E1.1. Using the 1:1 ratio, Griffin's criminal history score remains the same, at 12 total criminal history points and a criminal history category of V. With a total offense level of 10 and a criminal history category of V, the advisory guidelines recommend that Defendant Griffin serve a sentence of imprisonment of 21-27 months. *See* U.S.S.G. ch. 5, pt. A. The Court will operate from this advisory guidelines range, and next consider the §

3553(a) factors.

**V. Section 3553(a) Factors**

Although district courts must consider the section 3553(a) factors, the Court need not explicitly analyze each of the factors in the sentencing determination. *See, e.g.*, *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006); *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005). The § 3553(a) factors pertinent to the Defendant's case are: the nature and circumstances of the offense; the Defendant's history and character; the purposes of sentencing; the kinds of sentences available; the Sentencing Commission's advisory guidelines; and the need to avoid unwarranted sentencing disparities.[2/]

1. The Nature and Circumstances of the Offense

Defendant Griffin pled guilty to having sold crack and powder cocaine on three occasions between October 2007 and March 2008. The sales involved relatively small quantities of cocaine.[3/] However, based on the recurring nature of the sales, it appears that Griffin was involved in selling drugs on an ongoing basis. Given that Griffin related no history of employment, it seems more likely

---

[2/] The section 3553(a) factors include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) . . . the [guidelines] sentencing range . . . ;
(5) any pertinent policy statement issued by the Sentencing Commission . . . ;
(6) the need to avoid unwarranted sentence disparities . . . ; and
(7) the need to provide restitution to any victims of the offense.

[3/]Griffin distributed 2.9 grams of cocaine base on October 19, 2007; 1.4 grams of cocaine on January 17, 2008; and 2.5 grams of cocaine base on March 6, 2008.

that he makes a living selling drugs. This continued involvement in selling drugs suggests the need for a more serious sentence.

2. The Defendant's History and Character

Defendant Griffin is 22 years old and has no wife or children, although he says he is expecting the birth of a child. He has only a ninth grade education, no military service, and has never been employed. It appears the Defendant came from a somewhat broken family, or at least an unsupportive family. None of these factors suggest either a longer or shorter sentence.

Defendant Griffin, does, however, have a significant criminal history, and that works strongly against him. To be a criminal history category of V at such a young age (22) suggests somebody who has recurrently moved in and out of the criminal arena. Most troubling is the Defendant's 2005 conviction for robbery and retaliation, both of which are serious offenses. Even more problematic, courts sentenced Defendant Griffin to judicial release on several occasions, and each time he violated the conditions of his release within a relatively short period of time. That suggests a real risk of recidivism and that the Defendant has not comported his conduct to supervision. The instant offense is another indication of the same concerns – Griffin was on community control by the State of Ohio at the time he committed these drug offenses. Each of these factors suggest the need for a longer sentence to deter the Defendant from further criminal conduct and also to incapacitate him to some degree. Moreover, the Defendant appears to have a substance abuse problem, which seems to be a contributing factor to many of his criminal offenses. Longer incarceration will provide more opportunity for rehabilitation.

Taken as a whole, the Defendant's history and characteristics suggest the need for a sentence greater than the advisory guidelines range. The Court is particularly influenced by the Defendant's

past serious offenses and his inability or unwillingness to comply with post-release supervision.

3. The Purposes of Sentencing

The Court must choose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the Defendant, and provides the Defendant with needed training, care, and treatment. 18 U.S.C. § 3553(a)(2).

4. The Kinds of Sentences Available

The Court cannot sentence Defendant Griffin to a term of imprisonment greater than 30 years. 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 851. Although under 18 U.S.C. § 3561(a), Griffin qualifies for probation, the Sentencing Guidelines do not authorize a term of probation in this case. U.S.S.G. § 5B1.1, application note 2. Statutorily, the Court must impose a term of six years supervised release to follow any period of imprisonment. 21 U.S.C. § 841(a)(1) and (b)(1)(C).

5. The Sentencing Commission's Advisory Guidelines Range

As described above, using the 1:1 ratio, the advisory guidelines recommend imprisonment for 21-27 months. *See* U.S.S.G. ch. 5, pt. A. The Guidelines additionally recommend a fine between $2,000 and $3,000,000. U.S.S.G. § 5E1.2. The Defendant argued for a sentence within this lower Guidelines range, advocating the 1:1 ratio and emphasizing that he sold minimal quantities of crack and powder cocaine. [Doc. 25 at 9.] Griffin argues that these small quantities involved, combined with his young age and the recency of his past convictions, suggest that a sentence within the 21-27 month advisory range would be sufficient, but not greater than necessary, to fulfill the statutory sentencing purpose. [*Id.* at 13.]

6. The Need to Avoid Unwarranted Sentencing Disparities

Nationwide, similar offenders are almost invariably sentenced to imprisonment. In 2007, 95% of federal defendants convicted of drug trafficking offenses were sentenced to a period of incarceration, while only 1.5% were sentenced to probation alone. *See* United States Sentencing Commission, Office of Policy Analysis, Type of Sentence Imposed by Primary Offense Category-2007 (Table 4), *available at* http://www.ussc.gov/JUDPACK/2007/6c07.pdf. It is difficult to determine disparities among federal sentences for drug trafficking because the information provided by the Sentencing Commission is so general, and it can be hard to compare apples to apples. Among defendants convicted of drug trafficking offenses who are given prison sentences, the median sentence imposed nationally was 85 months, and it was 92 months in the Sixth Circuit. *Id.* at Table 7.

By adopting the 1:1 crack-to-powder ratio, the Court is necessarily sentencing this Defendant to a significantly lower sentence than if it were applying a 100:1 ratio. Therefore, there will necessarily be some disparity between the sentence imposed in this case and those imposed in other federal cases involving the distribution of crack, where the 100:1 ratio is applied. However, for the reasons discussed above, the Court believes this particular disparity is *warranted*.

Moreover, section 3553(a)(6) directs the Court to consider disparities between "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a)(6). The provision specifically uses the language "similar conduct" as opposed to "similar offense." Individuals who have "similar conduct" to that of the Defendant may also be charged and sentenced in Ohio state court. Therefore, the Court will also consider potential "sentence disparities among defendants with similar records who have been found guilty of similar conduct" in Ohio.

Under Ohio law, the Defendant's trafficking in crack cocaine would be a Third Degree

Felony, punishable by a mandatory definite prison term of one, two, three, or four years. Ohio. Rev. Code §§ 2925.03(C)(4)(d), 2929.14(A)(3), 2929.14(C). The 33 month sentence the Court imposes in this case is within the range of the sentences permissible for the same conduct under Ohio law. The Court's chosen method of sentencing, applying the 1:1 ratio, therefore avoids disparities among individuals in Ohio found guilty of similar conduct who are sentenced in federal and state court.

Applying the new ratio, as this Court will do categorically from now on, the Court believes that this sentence of 33 months avoids unwarranted sentencing disparities.

**VI. Sentencing Decision**

After a thorough consideration of the parties' arguments, the advisory guidelines range, and the other relevant 18 U.S.C. § 3553(a) factors, the Court chooses not to follow the advisory guidelines, which apply the 100:1 ratio. Even applying the 1:1 ratio, the Court chooses not to follow the advisory guidelines. In this case, using the 1:1 ratio, the Court concludes that a sentence above the guidelines range is appropriate to satisfy the purposes of criminal punishment. Defendant Griffin has a history of recidivism and a demonstrated inability to comport his conduct with the requirements of community control.

The Court therefore finds that a sentence of 33 months reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the Defendant. *See* 18 U.S.C. § 3553(a)(2).

This sentence of 33 months is to run consecutive to the state sentence Griffin is currently serving for violating community control imposed as a result of his robbery and retaliation convictions. The Defendant has eight months of that state sentence remaining. The Court has

discretion to impose the sentence for the instant offense to run concurrently or consecutively. U.S.S.G. § 5G1.3(c). In this case, the Court finds no good reason to run the sentences concurrently. The instant offense had no direct relationship to the underlying state offense; the robbery offense and these drug trafficking offenses are quite different by nature. Therefore, the 33 months will run consecutive to the undischarged state sentence, with credit granted for any federal time served.

**VII. Conclusion**

For the reasons stated above, the Court sentences the Defendant to a prison term of 33 months, to run consecutive to the state sentence, together with a six-year term of supervised release and a special assessment of $300.

IT IS SO ORDERED.

Dated: October 23, 2009

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE